**STAGGS et al. v. PENA et al.**

No. 10738.

Court of Civil Appeals of Texas.
San Antonio.

Oct. 18, 1939.

Rehearing Denied Nov. 22, 1939.

Oscar T. Vale, of Rio Grande City, R. M. Bounds, of McAllen, L. R. Brooks, of Rio Grande City, and Seabury, Taylor & Wagner, of Brownsville, for appellants.

Swearingen & Miller, of San Antonio, and Strickland, Ewers & Wilkins, of Mission, for appellees.

SMITH, Chief Justice.

This proceeding was brought by Esteban Pena and others for the appointment of a receiver with power and instruction to sell and execute a mineral lease upon all unleased lands situated in Porcion 82, in Starr County, comprising approximately 6,000 acres. Howard L. Staggs and others intervened below, and upon a hearing Honorable J. E. Leslie was appointed receiver as prayed for. The interveners, only, have appealed.

The application for the appointment of a receiver, constituting the plaintiffs' unverified first amended original petition, was as follows:

"Now come Esteban Pena and Jose G. Guajardo and Nicasio Villareal who reside in Starr County, Texas, suing herein for themselves and for the benefit of all other parties similarly situated, hereinafter called 'Plaintiffs,' complaining of Juan Ramirez and Pedro Ramirez, who reside in Starr County, Texas, and Federico Ramirez, who resides in Hidalgo County, Texas, and who are sued herein both individually and as representatives of that class of persons comprising all the owners of all the unleased land and the oil, gas and other minerals therein in Porcion No. 82, Nicolas Vela, Original Grantee, aggregating 6000 acres of land, more or less, in Starr County, Texas, hereinafter called 'Defendants', and with leave of the Court file this their First Amended Original Petition, and respectfully say:

"1. Undivided Ownership. Plaintiffs and Defendants are the owners of all titles and interests within said entire Porcion, which interests are not covered by oil, gas or mineral leases.

"2. Numerous Owners. The number of persons so owning such unleased interests in said Porcion is so great and multitudinous that the joinder of all of them personally and individually as parties to this Cause would be impracticable, would produce interminable delay and would probably obstruct the purposes of justice. Moreover, the residence, as well as the legal status of many of such legion owners are unknown, many of such owners being nonresidents of the State of Texas and of the United States, and others being under various legal disabilities. The named parties hereto fairly represent the interests, titles and rights involved of all such owners of unleased interests in said Porcion and of the class comprised of all such owners, and the unnamed members of such class have a common interest with such named parties before the Court, and there is no antagonism or adverse interests as between the named and unnamed members of such class, such that through the named parties to this suit as representatives of such class the Court will be able fairly and fully to adjudicate the question involved, and it will be practicable through such named parties to settle the issues presented for the benefit of all parties comprising such class.

"3. Drainage. Said Porcion 82 adjoins on the East and West Porciones 81 and 83, in both of which adjoining Porciones there have been completed by other persons numerous oil and gas wells which are now producing oil and gas in paying and commercial quantities, some of which wells are offsets to the boundary of said Porcion 82. By such wells the oil and gas beneath the surface of said Porcion 82 is being drained and withdrawn by third persons. Other and additional wells are in contemplation and will be drilled on said adjoining Porciones, which threaten and will increase further drainage from said Porcion 82 of its said mineral content. By such drainage, actual and threatened, the rights, titles and interests in said Porcion of the parties hereto are being and are in danger of being lost, removed and materially injured, and subjected to irreparable injury and waste.

"4. Prevention of Drainage. Because of the multitudinous numbers of the parties to this Cause and also because of their being widely scattered, the unknown whereabouts of many of them, the legal disabilities of others and also because of the want of adequate skill, experience, equipment and money on the part of said parties, they are unable and will remain unable themselves to drill and complete the oil and gas wells on said Porcion 82 necessary to prevent the above described drainage of its mineral content, and to avoid the irreparable injury to such parties and each of them through such drainage.

"5. Mineral Lease. The only practicable means by which such parties can secure the drilling of such required wells necessary to prevent such drainage is by the making, execution and sale of an oil, gas and mineral lease from such parties, as lessors, to some third person, as lessee, creating in such third person an oil, gas and mineral leasehold estate, which third person, as such lessee and the owner of such mineral leasehold estate, will be a person of such skill and experience and having such equipment and financial strength as are required to drill such wells on said Porcion 82.

"6. Receiver. The making of such mineral lease necessary to prevent such drainage, by the parties hereto, acting personally and individually in the sale, execution and delivery of any such lease, is impossible for all practical purposes because of their multitudinous numbers, their widely scattered residences and the unknown whereabouts and legal disabilities of many of them, such

that if such lease is to be made and such drainage to be prevented, it is necessary that a Receiver of said unleased interests in said Porcion be appointed to act for and on behalf of all such owners of such unleased interests in said Porcion in the making, sale, execution and delivery of such mineral lease, pursuant to the orders and directions of this Honorable Court.

"Premises considered, Plaintiffs pray the Court, the Defendants having been duly cited, that upon a hearing hereof a Receiver of all such unleased interests in said Porcion be appointed to make and execute an oil, gas and mineral lease covering such unleased interests, for such consideration and upon such terms and provisions as the Court may direct, and for general relief."

"The unnamed (class) defendants" answered, through a court-appointed attorney ad litem, by general demurrer and general denial, and the named defendants filed like answers, through attorneys of their own selection.

The various interveners interposed general and special demurrers to the plaintiffs' petition, raising the questions presented in this appeal, denied the allegations in the petition by verified traverse, and affirmatively set up ownership of the fee, or undivided interests, in certain segregated parcels of land in Porcion 82, praying for adjudication of their titles and for removal of cloud claimed to have been cast thereon by plaintiffs' suit. In response to plaintiffs' pleas in abatement, the trial court struck interveners' prayers for affirmative relief, thereby restricting the issue to one for appointment of a receiver.

Upon a hearing after notice the trial judge appointed Honorable J. E. Leslie as receiver, with authority and instruction to sell and execute, subject to the court's approval, an oil and gas lease upon all lands in said Porcion 82 which were not under recorded lease at the time of execution of such lease by the receiver. It was further provided in the order that all lands in said Porcion under existing oil and gas leases were expressly excluded from the operation of the judgment for every purpose.

None of the named, or "unnamed," defendants have appealed from the order, but Howard L. Staggs and the other interveners below have prosecuted this appeal.

It is obvious that appellees sought the appointment of a receiver by virtue of § 1, Art. 2293, R.S.1925, which provides:

"Receivers may be appointed by any judge of a court of competent jurisdiction of this State, in the following cases:

"1. In an action * * * · between partners or others jointly owning or interested in any property or fund, on the application of the plaintiff or any party whose right to or interest in the property or fund or the proceeds thereof is probable, and where it is shown that the property or fund is in danger of being lost, removed or materially injured. * * *"

 It is first contended by appellants, in effect, that this action having been brought primarily or solely for the appointment of a receiver, independently of any suit for permanent or ultimate relief, it is unauthorized and will not lie; that a receiver will not be appointed except in a proceeding ancillary to some action for permanent or other relief. We are of the opinion that the contention is sound, and accordingly sustain appellants' first proposition of law. 36 Tex.Jur. pp. 13, 20, §§ 4, 7, and authorities cited. It is said in Tex. Jur.:

"The ordinary purpose of a receivership is to take full charge and possession of property involved in litigation, in order to protect, defend and preserve it, to impound and hold it subject to the order of the court, or, if necessary, to administer or manage it, 'upon a principle of justice for the benefit of all concerned,' pending final determination of the litigation and the rights of the parties. The remedy is intended to aid in the 'efficient exercise' of the court's powers, and to secure the property for the one (or those) who may ultimately be ascertained to be entitled to it, with the least possible injury; not to destroy the rights of persons, nor to defraud or embarrass them in the assertion of rights, nor to destroy, dissipate or dispose of the property. Thus when mortgaged property is placed in receivership, the purpose is to aid in saving the property from waste and deterioration until it can be sold by virtue of a decree of court. And when a receivership is created after the rendition of a verdict, its object is to carry out the provisions of the judgment directing a sale of the property and the payment of the proceeds to the parties entitled thereto. * * *

"With rare exceptions resting upon statutory provisions, the right to a receiver does not exist apart from some other right, or the infringement of some right, so as to constitute an independent cause of action.

Indeed, many of the decisions affirm that the remedy is merely ancillary or auxiliary to a pending 'main' suit or action for some ultimate relief, or to establish or vindicate some right, other than the appointment of a receiver. In short, a receivership is not usually regarded as an end in itself, but must stand or fall with the pendency of the main suit, to which it is incidental."

■ Obviously, the primary and sole purpose of this proceeding was to procure the appointment of a receiver. No other relief was sought or granted. It is true that appellees prayed and the court directed that the receiver sell and execute a lease upon indefinite and unascertained portions of Porcion 82, but such prayer was for, and such provision in the appointing order was no more than, a mere instruction to the receiver as to his duties, and did not raise the application for receivership to the dignity of a lawsuit. 36 Tex.Jur. p. 24, § 7.

The action was one solely for the appointment of a receiver wholly dissociated from any action for permanent or ultimate relief, in flagrant contravention of the rule stated.

We think appellees' petition was subject to other vital and fundamental objections, but it is not necessary to undertake to point out any of them, except the one discussed above.

The judgment will be reversed, and the receivership vacated, at the cost of appellees.